**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **ANTHONY FEARRON, *et al.*,** | |
| Plaintiffs, | |
| v. | Civil Action No. 20-14819 (ZNQ) (LHG) |
| **MERCER COUNTY SHERIFF'S OFFICER MICHAEL RESTUCCIA (Badge 239), *et al.*,** | **OPINION** |
| Defendants. | |

**QURAISHI, District Judge**

THIS MATTER comes before the Court upon two Motions to Dismiss ("the Motions"). The first Motion was filed by Defendants County of Mercer ("Mercer County"), Mercer County Sheriff's Office ("MCSO"), Mercer County Sheriff's Officers Michael Restuccia (Badge 239) ("Officer Restuccia") and George T. Dzurkoc, III (Badge 227) ("Officer Dzurkoc"), and Mercer County Sheriff John Kemler ("Sheriff Kemler") (collectively, "County Defendants"). (ECF No. 5.) The second Motion was filed by Defendants Trenton Police Detectives Travis Maxwell ("Det. Maxwell"), Daniel Simpkins ("Det. Simpkins"), Eliezer Ramos ("Det. Ramos"), and John Sangillo ("Det. Sangillo") (collectively, "TPD Defendants"). (ECF. No. 13.) Both Motions were filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure[1].

County Defendants and TPD Defendants filed Briefs in Support of the Motions ("County's Moving Br.", ECF No. 5-1; "TPD's Moving Br.", ECF No. 13). Plaintiffs filed opposition to the

---

[1] For the sake of brevity, all references herein to "Rule" will be to the Federal Rules of Civil Procedure.

County Defendants' Motion ("Opp'n Br. to County", ECF No. 9), and opposition to TPD Defendants' Motion ("Opp'n Br. to TPD", ECF No. 17).  Both County Defendants and TPD Defendants replied.  ("County's Reply Br.", ECF No. 14; "TPD Reply Br.", ECF No. 19.)

The Court has carefully considered the parties' arguments and decides the matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1.  For the reasons stated herein, the Court will GRANT TPD Defendants' Motion and GRANT IN PART AND DENY IN PART County Defendants' Motion.

## I.     BACKGROUND

### A.     The Parties

Plaintiffs Anthony Fearron ("Fearron") and Susan Giles ("Giles") are African-American residents of Hamilton, New Jersey.  (Complaint ("Compl.") ¶¶ 6, 106; ECF No. 1.)  Plaintiffs reside with Julius Lamont ("Lamont"), Giles's son and Fearron's stepson.  (*Id.* ¶ 32.)

At all times relevant, Defendants Sheriff Kemler, Officer Restuccia, and  Officer Dzurkoc were employed by MCSO and Mercer County.  (*Id.* ¶¶ 11, 12, 13.)

At all times relevant, Det. Maxwell, Det. Simpkins, Det. Ramos, and Det. Sangillo were employed by the Trenton Police Department ("TPD") and the City of Trenton.  (*Id.* ¶¶ 14, 15, 16, 17, 18.)

### B.     Factual and Procedural Background[2]

On or about October 23, 2018, Officer Restuccia and other Mercer County law enforcement officers executed a child support arrest warrant for Lamont ("the Warrant") at Fearron's and Giles's home in Hamilton, New Jersey.  (*Id.* ¶¶ 28, 32.)  Upon arrival at the residence, Officer Restuccia confronted Fearron and demanded access to his home.  (*Id.* ¶¶ 31–33.)  Fearron refused

---

[2] For purposes of this motion, the Court will accept all facts alleged in the Complaint as true.  *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992).

the officers entry into the home without first showing him and his wife (Giles) the Warrant.  (*Id.* ¶ 35.)  Officer Restuccia refused the request and instead insisted that Lamont was inside the home and attempted to enter without producing the Warrant.  (*Id.* ¶ 36.)

Giles subsequently asked Officer Restuccia to produce the Warrant.  (*Id.* ¶¶ 37, 39.)  Officer Restuccia then walked back to his car to obtain the Warrant.  (*Id.* ¶ 40.)  He proceeded to tell Plaintiffs that their son was a "deadbeat scum that did not take financial care of his child."  (*Id.* ¶ 41.)  Officer Restuccia returned with a document that did not appear to be an official Court Warrant, as it did not contain a seal or a Judge's signature.  (*Id.* ¶ 42.)  While Plaintiff Giles attempted to read and review the document, Officer Restuccia forcefully attempted to enter the home.  (*Id.* ¶ 43.)

Fearron stood at the front door and told Officer Restuccia that he could not enter the home until Giles finished reading the Warrant.  (*Id.* ¶ 46.)  Giles asked that she be permitted to get her reading glasses because she could not see anything on the alleged Warrant indicating that it was for Lamont.  (*Id.* ¶ 47.)  Officer Restuccia then wrapped his hands on Giles's wrists and attempted to push his way into the home.  (*Id.* ¶ 48.)  Two unidentified Caucasian officers, John Doe #1 and John Doe #2, joined Officer Restuccia at the door.  (*Id.* ¶ 50.)  The John Doe Officers, who are upon information and belief affiliated with either MCSO or Mercer County, began physically pushing against Fearron.  (*Id.* ¶¶ 50, 51.)  Officer Restuccia knocked Fearron off balance, and he fell backwards into a solid wooden coat rack.  (*Id.* ¶ 52.)

Thereafter, the three officers dragged Fearron out of the house and onto the porch.  (*Id.* ¶ 53.)  The officers slammed Fearron's face into a wooden outdoor post.  (*Id.* ¶ 56.)  The officers then twisted both of Fearron's wrists, wrenched his arms behind his back, pinned him down and handcuffed him.  (*Id.* ¶¶ 59, 60.)  John Does #1 and #2 held Plaintiff Fearron on the porch while

Officer Restuccia and a third Caucasian John Doe Officer (John Doe #3) entered Plaintiffs' home and questioned Giles. (*Id*. ¶ 61.) John Does #1 and #2 then removed Fearron from the porch and placed him inside the police vehicle. (*Id*. ¶ 66.)

Unbeknownst to Plaintiffs, Lamont was actually inside the home, and was subsequently arrested by John Doe #3 and Officer Restuccia. (*Id*. ¶¶ 69–74.)

A white Mercer County van arrived, and police transported both Fearron and Lamont to Mercer County Courthouse. (*Id.* ¶¶ 91, 92.) Both individuals were brought into the basement of the courthouse. (*Id.* ¶ 92.) Fearron's face was severely injured. (*Id.* ¶ 93.) Nine hours later, Fearron was released after his attorney had arrived. (*Id.* ¶ 98.)

The State of New Jersey thereafter filed charges against Fearron for resisting arrest and obstruction of justice. (*Id.* ¶ 99.) Through the litigation of these charges, Fearron's attorney requested various critical evidence from the State, including Body Worn Camera footage, which Defendants refused to turn over. (*Id.* ¶ 101.) The State dismissed the charges against Fearron two years later. (*Id.* ¶ 100.)

On October 22, 2020, Plaintiffs filed a Complaint under 42 U.S.C. § 1983, pleading eight claims: violation of the Fourth Amendment for the warrantless entry into the home (Count One); false arrest, false imprisonment, and unreasonable and excessive force under § 1983 and the New Jersey Civil Rights Act ("NJCRA"), or N.J.S.A. 10:6-1, *et seq*. (Count Two); policymaker and/or supervisor liability and deliberate indifference under § 1983 and the NJCRA (Count Three); negligent screening, hiring, training, supervision and retention (Count Four); malicious prosecution (Count Five); intentional infliction of emotional distress ("IIED") (Count Six); negligence under the New Jersey Tort Claims Act ("NJTCA"), or N.J.S.A. 59:1-1, *et seq.* (Count

Seven); and violations of the NJLAD (Count Eight). (*Id.* ¶¶ 113–98.) Plaintiffs seek compensatory and punitive damages.

## II.    JURISDICTION

The Court has subject matter jurisdiction over Plaintiffs' federal claims under 28 U.S.C. §§ 1331 and 1343, and has supplemental jurisdiction over the New Jersey state law claims pursuant to 28 U.S.C. § 1367(a).[3]

## III.    LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, "all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *McTernan v. City of York,* 577 F.3d 521, 526 (3d Cir. 2009) (internal citation and quotation marks omitted). To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56. Further, all reasonable inferences must be made in the Plaintiff's favor. *Nami v. Fauver*, 82 F.3d 63 (3d Cir.1996).

Where a motion to dismiss attaches or relies on documents extrinsic to the pleadings, the court must first consider whether such documents may permissibly be considered. *Hinsinger v.*

---

[3] The Complaint asserts 28 USC §1339 among its bases for the Court's jurisdiction. 28 USC §1339, however, vests district courts with original jurisdiction "arising under any Act of Congress relating to the postal service." There are no postal service issues raised by the Complaint. Accordingly, the Court sets aside that basis for jurisdiction.

*Confier Ins. Co.*, Civ. No. 20-14753, 2022 WL 17820259, at *2 (D.N.J. Dec. 20, 2022).  Courts may consider "document[s] integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  *United States v. Estate of Elson*, 421 F. Supp. 3d. 1, 5 (D.N.J. 2019) (quoting *In re Asbestos Prod. Liab. Litig.* (No. VI), 822 F.3d 125, 134 n.s7 (3d Cir. 2016)).  When presented with extrinsic documents not properly considered on a motion to dismiss, the court may disregard them, deny the motion, or convert it into a motion for summary judgment and provide a reasonable opportunity for all parties to present material pertinent to the motion.  *See* Fed. R. Civ. P. 12(d); *Dix v. Total Petrochemicals USA, Inc*., Civ. No. 10-3196, 2011 WL 2474215, at *2 (D.N.J. June 20, 2011).

## IV.    DISCUSSION

### A.    Use of Extrinsic Documents

TPD and County Defendants[4] attach a copy of the MCSO Investigation Report ("Investigation Report"), dated November 9, 2018, and a copy of the Child Custody Arrest Warrant for Julius Lamont dated October 23, 2018, to their Motions to Dismiss (ECF No. 5-2, Exhibits A–B; ECF No. 13-2, Exhibits B–C).

The Investigation Report, authored by Officer Restuccia, contains a summary of events that occurred on the day of incident.  (ECF No. 5-2 at Ex. A.)

The Warrant authorizes Lamont's arrest for the failure to pay child support payments as directed by court order, signed by a judge of the Superior Court of New Jersey on September 14, 2018.  (*Id*. at Ex. B.)

---

[4] TPD Defendants have adopted and assert all arguments made by County Defendants for both their Moving Brief and Reply Brief, with a few exceptions.  Plaintiffs, in response, have also adopted and assert arguments made in its Opposition Brief to County Defendants for its Opposition Brief to TPD Defendants, with several exceptions.

Plaintiffs argue that Defendants' exhibits are extrinsic to the Complaint and merit converting its motion into one for summary judgment. (Opp'n Br. to County at 3–4).

County Defendants, in reply, argue that the exhibits should be incorporated by reference because they are central to Plaintiffs' claim of constitutional violations and integral to County Defendants' motion because they challenge the factual assertions in the Complaint. (County's Reply Br. at 2–3.)

Here, the allegations in the Complaint do not mention nor reference the Investigation Report. The Investigation Report does not contain material specifically relied upon, referenced, incorporated, or adopted in the Complaint. It is therefore extrinsic to the pleadings. *See Estate of Elson,* 421 F. Supp. 3d at 5. Accordingly, the Court will not consider the Investigation Report for the purposes of the instant Motions. Any arguments made by Defendants that rely on the Investigation Report will not be considered.

The Complaint, however, regularly refers to the Warrant. (*See* Compl. ¶¶ 42, 114–15, 173.) Therefore, the Court finds that the Warrant is "integral to or explicitly relied upon in the complaint." *Estate of Elson*, 421 F. Supp. 3d at 5. Accordingly, the Warrant can be considered for the purposes of the instant Motions. For the reasons that follow, however, the Court need not consider the Warrant to decide the Motions.

## B. Whether the Complaint Adequately Pleads Claims Against TPD Defendants

First, TPD Defendants contend that the Complaint does not allege any wrongdoing on behalf of any of the TPD Defendants. (TPD's Moving Br. at 2; TPD's Reply Br. at 2.) Plaintiffs maintain that the Complaint sufficiently pleads § 1983 allegations against the TPD Defendants because: (1) the Complaint's definition of "Individual Officer/Officers" or "Officer/Officers" in paragraph 25 of the Complaint includes the TPD Officers; (2) the identities of some of the John Doe officers has yet to be revealed in discovery; and (3) whether TPD Defendants engaged in

excessive force and unlawful entry and arrest are material facts in dispute; and (4) notwithstanding the previous points, the Complaint also alleges Bystander Officer Liability in paragraph 104, which is premised on some of the officers, including the TPD officers, failing to intervene to stop the constitutional violations.  (Opp'n Br. to TPD at 3–6.)

Here, the Complaint's factual background fails to identify any Trenton Police Department Officer as being present or involved during the incident in question.  (*See* Compl. ¶¶ 26–112.)  The Complaint identifies Officer Restuccia and two other officers believed to be associated with MCSO and/or Mercer County.  (*See id.* ¶¶ 32, 50.)  While Plaintiffs name the officers affiliated with the Trenton Police Department within the definition of "Individual Defendant Officers" (*see id.* ¶ 25), Plaintiffs allege no facts that support a member of Trenton Police Department even being present during the incident in question.  Rather, the allegations related to TPD Defendants are legal conclusions.  (*See* id. ¶¶ 114, 122 ("Individual Defendant Officers unlawfully and without probable cause entered Plaintiffs' home", "The above-described conduct of the Defendant Officers constitutes unreasonable and/or excessive force[.]").)  Accordingly, the Court finds Plaintiffs have failed to sufficiently allege facts to support their claims against TPD Defendants.  *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) ("a court need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss").  TPD Defendants' Motion will therefore be GRANTED and all claims against the City of Trenton, Trenton Police Department, and the individual Trenton officers will be DISMISSED WITHOUT PREJUDICE.

**C.    Whether Plaintiffs Adequately Plead a Claim for Unlawful Entry (Count One)**

Count One alleges that Sheriff's Officers Restuccia and Dzurkoc ("Individual Defendant Officers" or "IDOs"), unlawfully entered Plaintiffs' home in violation of the Fourth Amendment.[5] (Compl. ¶¶ 114-19.)  Plaintiffs argue that the IDOs unlawfully entered their home.  (Opp'n Br. to County at 22–23.)  County Defendants argue that the claims against the IDOs should be dismissed with prejudice because they had a valid arrest warrant and probable cause to enter Plaintiffs' residence.  (County's Moving Br. at 7–10.)

The Fourth Amendment restricts law enforcement from entering a home without a warrant. *See* U.S. Const. Amend. IV.  "[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority [for law enforcement] to enter a dwelling [where] a suspect lives and when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980.)  Accordingly, in the execution of an arrest warrant, a Fourth Amendment violation occurs where law enforcement enters the dwelling without a reason to believe the suspect is located within. *Id*.

Count One alleges that the "Individual Defendant Officers unlawfully and without probable cause illegally entered Plaintiffs' home."  (Compl. ¶ 114.)  Nothing within the Complaint, however, even read in its most favorable light, alleges that the Individual Defendant Officers did not have reason to believe the suspect was located within the residence. *See Payton*, 445 U.S. at 603.  This is a required element for Plaintiffs' claim.  Accordingly, the Complaint does not plead a plausible claim a Fourth Amendment violation.  County Defendants' Motion to Dismiss will be

---

[5] The Complaint identifies Individual Defendant Officers as both TPD Defendant Officers and Mercer County Defendant Officers.  Because the Court has already determined that the Complaint fails to state a claim against any TPD Defendant, the Court will refer to Individual Defendant Officers as the remaining Defendant County Officers Restuccia and Dzurkoc.

GRANTED and Count One against the Mercer County Defendants will be DISMISSED WITHOUT PREJUDICE.

> ### D.    Whether Plaintiffs Adequately Plead a Claim for False Arrest, False Imprisonment, and Unreasonable and Excessive Force (Count Two)

Count Two alleges that Individual Defendant Officers violated the New Jersey Constitution, United States Constitution, and 42 U.S.C. § 1983 on the theories of false arrest, false imprisonment, and unreasonable and excessive force. (Compl. ¶ 120–32.) County Defendants argue that they are entitled to qualified immunity on these claims because (1) the IDOs did not use excessive force; (2) Plaintiffs fail to meet the pleading requirements for the claims of excessive force; and (3) no false arrest, false imprisonment, or unreasonable force was undertaken by law enforcement. (County's Moving Br. at 13–16.)

When a federal right is infringed by an official acting under color of state law, the Civil Rights Act of 1871 provides a remedy:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 allows a party who has been deprived of rights, privileges, or immunities secured by the Constitution to seek damages and injunctive relief. *See id*.

Section 1983 is not itself a source of substantive rights; it provides a remedy for violations of rights protected by other federal statutes or by the U.S. Constitution. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Therefore, in evaluating a § 1983 claim, a court must first "identify the exact contours of the underlying right said to have been violated" and determine

"whether the plaintiff has alleged a deprivation of a constitutional right at all." *Id.* (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).

A prima facie case under § 1983 requires a plaintiff to demonstrate that: (1) a person deprived her of a federal right; and (2) the person who deprived her of that right acted under color of state law. *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

### 1.    False Arrest and False Imprisonment

Count Two alleges claims of false arrest and false imprisonment. (Compl. ¶¶ 126–32.) Plaintiffs claim that IDOs "lacked probable cause to arrest, seize and/or imprison Plaintiff Fearron" and that "at no time of the entire encounter did [he] commit any offense against the laws of the State of New Jersey for which an arrest may lawfully be made." (*Id.* ¶¶ 127–28.)

To state a claim for false imprisonment, a plaintiff must establish: (1) that he was detained; and (2) that the detention was unlawful. *James v. City of Wilkes-Barre*, 700 F.3d 675, 682 (3d Cir. 2012) (citing *Wallace v. Kato*, 549 U.S. 384, 389 (2007)). "[W]here the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). Conversely, "[f]alse arrest and false imprisonment claims will 'necessarily fail if probable cause existed for any one of the crimes charged against the arrestee.'" *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *Dempsey v. Bucknell University*, 834 F.3d 457, 477 (3d Cir. 2016)).

For cases involving claims for unlawful arrest and false imprisonment, the availability of qualified immunity "turns on whether the police officers reasonably but mistakenly concluded that probable cause existed to arrest, detain and initiate criminal prosecution." *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 608 (D.N.J. 2002) (citation omitted). The Court must accept a plaintiff's

allegations as true and afford him the benefit of all reasonable inferences that can be drawn therefrom to determine if "there is any set of facts [he] can prove that would support a denial of immunity." *Kulwicki*, 969 F.2d 1454, 1462 (3d Cir. 1992).

Individual Defendant Officers argue that they lawfully detained Fearron and the detention "minimized the risk of harm to the officers and facilitated of the orderly completion of the search," because he had refused to cooperate with the execution of the Warrant, and that there was probable cause to detain Fearron and effectuate his arrest. (County's Moving Br. at 14.)  Plaintiffs argue that (1) there are issues of material fact about whether Plaintiff Fearron was cooperative or intentionally obstructed and resisted arrest; and (2) there is no evidence of probable cause to arrest, as illustrated by the dropping of criminal charges against Plaintiff Fearron. (Opp'n Br. to County at 33.)

The Complaint alleges that Fearron was handcuffed and transported to Mercer County Courthouse following the incident at the residence. (Compl. ¶¶ 76, 92.) Fearron was charged with resisting arrest and obstruction of justice. (*Id*. ¶ 99.) The Complaint also claims that the State had "abandoned" these charges after about two years. (*Id*. ¶ 100.) Plaintiffs argue, in opposition that they were dropped because of a "complete lack of probable cause." (Opp'n Br. to County at 33.) The Complaint, however, does not indicate that the State dropped the charges *because of* the officers' lack of probable cause.  Rather, the Complaint baldly asserts that Defendants lacked probable cause for the charges. The Court finds this allegation to be a bald legal assertion and the Court need not consider it. *See Morse,* 132 F.3d at 906.

Fearron's arrest here was premised on the fact that he allegedly obstructed justice when he restricted police from executing the arrest warrant. (*See* Compl. ¶¶ 35, 46, 99.)  The Court has already determined, however, that the facts set forth in the Complaint fail to sufficiently plead that

12

law enforcement unlawfully executed the arrest warrant. *See* § VI(C)(1), *infra*. Accordingly, the facts set forth in the Complaint cannot plausibly make out a claim of false arrest thereafter for obstructing justice. Additionally, Plaintiffs plead no facts to support that Giles was either falsely arrested or falsely imprisoned.

Despite considering the facts in the Complaint and drawing all reasonable inferences in Plaintiffs' favor, the Court concludes the allegations are insufficient to support claims for false arrest or false imprisonment. Accordingly, Defendant's Motion to Dismiss Count Two as to the false imprisonment and false arrest claims will be GRANTED. The false arrest and false imprisonment claims contained within Count Two will therefore be DISMISSED WITHOUT PREJUDICE.

### 2. Unreasonable and Excessive Force

The Fourth Amendment prohibits a police officer from using excessive force to effectuate an arrest. *Graham v. Connor*, 490 U.S. 386, 394–95 (1989). Excessive force claims arising in the context of an arrest are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham*, 490 U.S. at 395–97. Under this test, officers' actions must be analyzed "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." *Id*. at 397. The reasonableness of the force at issue "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396.

County Defendants argue that Plaintiffs only plead general allegations of excessive force and "fail to specify what the excessive force was and how it was unreasonable." (County's Moving Br. at 10.) Plaintiffs argue that they have provided more than enough detail and specificity to meet the pleading requirement. (Opp'n Br. to County at 5–6.)

Here, as to Giles, the Complaint alleges that Officer Restuccia "wrapped his hand on [her] wrist and attempted to push his way into the house." (Compl. ¶ 48.) The Complaint alleges no additional facts to support Giles' claim of excessive or unreasonable force. Accordingly, Giles fails to sufficiently plead a Fourth Amendment violation. The portion of the County's brief seeking dismissal of her claim will be GRANTED, and her excessive force claims will be DISMISSED WITHOUT PREJUDICE.

As to Fearron, the Complaint alleges that John Doe Officers physically dragged Fearron out of the home. (*Id*. ¶53.) The Complaint also alleges that the Officers "slammed [Fearron's] face, nose and eye into a wooden outdoor post" and Officer Restuccia "bent [him] over the railing" and "bent [his] neck down and placed him in a chokehold while the two other Officers held his arms," twisted his wrists, "wrenched his arms behind his back," and twisted his left elbow, thumb and wrist with excessive force." (*Id*. ¶¶ 56–60). Plaintiffs also allege that Fearron's face was severely injured. (*Id*. ¶ 93.) Reading these allegations in the light most favorable to the Plaintiffs, the facts plead, as to Fearron, are sufficient to support a claim that the Individual Defendant Officers used excessive force to effectuate Fearron's arrest. *See Walker v. City of Newark*, Civ. No. 19-16853, 2020 WL 3542502, at *8 (D.N.J. June 30, 2020) (finding a plaintiff sufficiently pled a constitutional violation where officers kicked and hit him in the face with a pistol while on the ground). Plaintiffs, therefore, sufficiently plead an excessive force claim as to Fearron.

### E.    Whether County Defendants are Entitled to Qualified Immunity on Fearron's Excessive Force Claim in  Two

County Defendants argue, however, that the claims of excessive force in Count Two should be dismissed under the doctrine of qualified immunity. (County's Moving Br. at 5–7.) In response, Plaintiffs argue that the Court cannot prematurely resolve the issue of qualified immunity on a

Rule 12(b)(6) motion since it is only proper for a Rule 56(c) motion.  (Opp'n Br. to County at 7–8.)

Generally, a plaintiff has no pleading burden to anticipate or overcome a qualified immunity defense, and a mere absence of factual allegations supporting a plaintiff's claim for relief under 42 U.S.C. § 1983 does not warrant dismissal of the complaint or establish a defendant's immunity.  *Thomas v. Independence Twp*., 463 F.3d 285, 289 (3d Cir. 2006).  Qualified immunity is generally upheld on a Rule 12(b)(6) motion only when the immunity is established on the face of the complaint.  *Leveto v. Lapiana*, 258 F.3d 156, 161 (3d Cir. 2001) (internal citations and quotation marks omitted).  Here, Individual Defendant Sheriff's Officers assert that they are entitled to qualified immunity because the Complaint does not contain sufficient factual allegations supporting a violation of a clearly established right.  (County's Moving Br. at 7.)

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Montanez v. Thompson*, 603 F.3d 243, 249-50 (3d Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)) (internal quotation marks omitted).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson*, 555 U.S. at 231.  This doctrine provides a government official with immunity from suit rather than a mere defense from liability.  *Id*.  Qualified immunity will not, however, act as a shield for "the official who knows or should know he is acting outside the law."  *Butz v. Economou*, 438 U.S. 478, 506–07 (1978).

To determine whether a defendant is entitled to qualified immunity, the court must undertake a two-step inquiry:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of a defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

*Pearson*, 555 U.S. at 232 (citations omitted).

Because qualified immunity "bestows immunity from suit, the Supreme Court 'repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in the litigation.'" *Thomas*, 463 F.3d at 291 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)) (amendment in original). Thus, "unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

Here, the Court has already determined that Fearron adequately pleads a violation of his rights under the Fourth Amendment on his excessive force claims. Additionally, at the time of the violation, he had a clearly established right to be free from unreasonable and excessive force. *See Mullenix v. Luna*, 577 U.S. 7, 11 (2015). Accordingly, County Defendant Officers are not entitled, at this juncture, to assert qualified immunity. County Defendants' Motion to Dismiss Fearron's excessive force claim in Count Two of the Complaint will therefore be DENIED.

### F.    Claims under the NJCRA: Unreasonable Force, False Arrest, and False Imprisonment

Count Two additionally claims false arrest, false imprisonment, and unreasonable and excessive force claims under the NJCRA. (Complaint ¶¶ 123–32.) The NJCRA "was modeled after 42 U.S.C. § 1983, and creates a private cause of action for violations of civil rights secured

under the New Jersey Constitutions . . . This district has repeatedly interpreted NJCRA analogously to § 1983." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011) (citations omitted). Plaintiffs' NJCRA claims are therefore subject to the same principles and legal requirements of § 1983. Therefore, as to Giles, for the reasons set forth above, Plaintiffs have failed to sufficiently plead NJCRA claims of excessive force, false arrest, or false imprisonment. As to Fearron, Plaintiffs sufficiently plead NJCRA claims of excessive force, but fail to sufficiently plead NJCRA claims of false arrest and imprisonment claims.

Accordingly, the Court will GRANT Defendant's Motion to Dismiss Count Two as to the NJCRA claims of false arrest and false imprisonment, but DENY Defendant's Motion to Dismiss Count Two as to the NJCRA claims excessive force against Fearron. The Court will therefore DISMISS Plaintiff Giles' claims of excessive force, false imprisonment, and false arrest under the NJCRA WITHOUT PREJUDICE, and it will DISMISS Plaintiff Fearron's claims off false arrest and false imprisonment under the NJCRA WITHOUT PREJUDICE.

## G.     Claims Against Defendants MCSO and Mercer County (Counts Three to Four)

Count Three asserts a claim of Policymaker/Supervisor Liability against Defendants MCSO and Mercer County for their obligation "to instruct, supervise, control and discipline the Individual Defendant Officers and should have had knowledge that the wrongs were about to be committed." (Compl. ¶¶ 134–35.) Count Four alleges a claim of deliberate indifference for negligent hiring, training, and supervision against the same defendants for being negligent "in screening, hiring, training, supervising, disciplining and retaining the IDO who knew or should

have known were Police Officers unable or unwilling to respect" under the theory *of respondeat superior*. (*Id.* ¶¶ 150–51.)[6]

        1.    <u>Defendant Mercer County Sheriff's Office as an Improper Defendant</u>

County Defendants argue that MCSO is an improper defendant in this matter. (County's Moving Br. at 17.) Plaintiffs maintain that MCSO is a proper defendant because of County Defendants' inconsistent arguments in their brief. (Opp'n to County's Br. at 36–37.) Plaintiff additionally argues that County Defendants "go to great lengths to disassociate the County from MSCO." (*Id.* at 36.)

In New Jersey, a municipal police department is not an entity separate from the municipality. *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997) (holding that police department and municipality same for § 1983); *Adams v. City of Camden*, 461 F.Supp.2d 263, 266 (D.N.J. 2006) (holding that police departments cannot be sued in conjunction with municipalities because police departments are administrative arms of municipalities, not separate entities); N.J.S.A. § 40A:14–118 (municipal police department is "an executive and enforcement function of municipal government").

Here, MCSO is the municipal police department and Mercer County is the municipality. As an administrative arm of Mercer County, MCSO is not a separate entity and therefore cannot be sued in conjunction with Mercer County. *See Adams*, 461 F. Supp. at 266; *see also DeBellis v. Kulp,* 166 F. Supp. 2d 255, 264 (E.D. Pa. 2001). Therefore, MCSO is not a properly named defendant.

---

[6] Counts Three and Four of the Complaint name Defendants MSCO, Mercer County, City of Trenton, Trenton Police Department, Sheriff Kemler, Director Coley, and John/Jane Does 1-99. The Court, however, only decides the instant Motion as to Defendants MSCO and Mercer County. The remaining Defendants have not filed a Motion to Dismiss.

Accordingly, Defendants Mercer County Sheriff's Office's Motion will be GRANTED. All claims against Defendant Mercer County Sheriff's Office will be DISMISSED WITH PREJUDICE. *See Clark v. Prison*, Civ. No. 15-6174, 2016 WL 5858985, at *2 (D.N.J. Oct. 6, 2016) (dismissing municipal police department with prejudice for the same reasons).

### 2.    Monell Claims (Counts Three and Four)

As set forth above, the Court will not dismiss Fearron's claim for excessive force against the individual Mercer County Sheriff's Officers. Accordingly, the Court next considers Plaintiffs' claims against the Mercery County and MCSO that stem from that claim.

Defendant Mercer County argues that because it is not the policy maker nor the exclusive employer for the Sheriff's Office, it cannot be held liable under a theory of *respondeat superior*. (County Moving Br. at 20.) County Defendants argue that Plaintiffs' claims are barred under *Monell*. (*Id*.)

A 42 U.S.C. § 1983 claim against a municipality may proceed in two ways: (1) "plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, or [(2)] that they were caused by a failure or inadequacy by the municipality that 'reflects a deliberate or conscious choice.'" *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (quotation omitted).

The Supreme Court of the United States addressed the issue of municipal liability in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Under *Monell*, municipalities are considered persons subject to liability under Section 1983 for violations of civil rights caused by municipal officials. *See id*. at 690, n. 4. However, a municipality cannot be considered liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory. *Id*. at 694. Thus, under *Monell*,

> a local government may not be sued under § 1983 for an injury inflicted solely by its employee or agents. Instead it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id*.

The Supreme Court further articulated that local governments "may be sued for constitutional deprivations visited pursuant to government 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Id*. at 694. Notably, Congress included the term "custom" in 28 U.S.C. § 1983 "because of the persistent and widespread discriminatory practices of state officials . . . Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id*. at 691 (quoting *Aidekes v. H.S. Cress & Co.*, 398 U.S. 144 (1970)).

Thus, a litigant seeking to impose liability on a municipality under § 1983 must plead sufficient facts to demonstrate that such a custom or policy caused the constitutional violation at issue in order to obtain a judgment against a municipality. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985); *see also Natale v. Camden County Correctional Facility*, 318 F.3d 575 (3d Cir.2003). To sustain a § 1983 claim against a municipality, "at the very least, there must be an affirmative link between the policy [or custom] and the particular violation alleged." *Tuttle*, 471 U.S. at 823. Further, it is insufficient for a plaintiff's allegations to be "wholly conclusory without one tidbit of factual support." *Kilagriff v. Strunk*, Civ. No. 18-10120, 2019 WL 1434763, at *5 (D.N.J. Mar. 31, 2019). Rather, a plaintiff must "back up his claims with facts, which, when accepted as true, [provide] support as to the plausibility of his *Monell* claims." *Id*.

Plaintiffs allege in Count Three that

> Defendants MSCO, Mercer County, Mercer County Sheriff John Kemler, TPD Director Sheilah A. Coley, and John/Jane Does 1-99 . . . failed to instruct, supervise, control, and discipline, on a continuing basis, the Individual Defendant Officers as to correct procedures and to refrain in their duties from unconstitutional entries into private homes, the unlawful use of excessive/unreasonable force, from violating citizens' Fourth and Fourteenth Amendment rights, and from the misuse of police authority. The allegations in this paragraph are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

(Compl. ¶ 137.)

Further, Plaintiffs allege in Count Four that

> Defendants Mercer County, Mercer County Sheriff John Kelmer, TPD Director Sheilah A. Coley, and John Does 1-99 were negligent in screening, hiring, training, supervising, disciplining, and retaining the Individual Defendant Officers who they knew or should have known were Police Officers unable or unwilling to respect and enforce the Constitutional rights of citizens.

(*Id.* ¶ 150.)

The Complaint, however, pleads no facts alleging that it is Mercer County's custom or policy to fail to properly instruct supervise, or discipline their law enforcement officers with respect to the Constitutional violations alleged in the Complaint. Plaintiffs therefore have not pled a plausible *Monell* claim. *See Kilagiraff*, 2019 WL 1434763, at *5. Accordingly, Defendant Mercer County's Motion to Dismiss as to the 42 U.S.C. § 1983 claims in Counts Three and Four will be GRANTED. Counts Two and Three will be DISMISSED WITHOUT PREJUDICE as to Defendant Mercer County.[7]

---

[7] The Court here makes no determination as to whether Plaintiffs have sufficiently stated a claim against Mercer County Sheriff John Kemler in Counts Two and Four. County Defendants, in their moving papers, do not seek dismissal of Sheriff Kemler as to Counts Three and Four. Rather, they only seek dismissal as to Defendant Mercer County.

    3.    <u>Claims under the NJCRA</u>

Count Three also raises claims of policymaker and/or supervisor liability and deliberate indifference under the NJCRA against Defendant Mercer County. (Compl. ¶¶ 133–48.) As noted above, claims alleged under the NJCRA are interpreted analogously to those under § 1983. *Trafton*, 799 F. Supp. 2d at 443. Therefore, Defendant Mercer County's Motion to Dismiss Plaintiffs' State Law Claims in Count Three will be GRANTED for the same reasons as the § 1983 claim, and the NJCRA claims of policymaker and/or supervisor liability and deliberate indifference against Defendant Mercer County will be DISMISSED WITHOUT PREJUDICE for the same reasons as the § 1983 claim.

In summary, Defendant Mercer County's Motion to Dismiss as to Plaintiffs' State Law Claims in Count Three will be GRANTED. Accordingly, the Court will dismiss Count Three against Defendant Mercer County WITHOUT PREJUDICE.

**V.    CONCLUSION**

For the reasons stated herein, the Court will GRANT IN PART and DENY IN PART County Defendants' Motion to Dismiss. It will GRANT TPD Defendants' Motion to Dismiss. An appropriate Order will be entered.[8]

Date: **March 6, 2023**

                               s/ Zahid N. Quraishi
                               **ZAHID N. QURAISHI**
                               **UNITED STATES DISTRICT JUDGE**

---

[8] County Defendants, in their moving brief, only seek dismissal of Counts One through Four. (*See generally*, Moving Br.) Accordingly, the Court makes no determinations as to remaining Counts Five through Eight.